IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATALIE O., | § | |
|       PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:19-CV-608-K-BK |
| | § | |
| COMMISSIONER of | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
|       DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, this case was referred to the undersigned United States magistrate judge for pretrial management, including issuing findings and a recommended disposition. As detailed here, Plaintiff's *Motion for Summary Judgment*, Doc. 18, should be **GRANTED**, Defendant's *Motion for Summary Judgment*, as construed from the responsive brief, Doc. 20,[1] should be **DENIED**, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings.

**I.  BACKGROUND**

**A. Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff applied for DIB in April 2013, alleging that she had been disabled since September 2012. Doc.

---

[1] Defendant's counsel did not comply with Local Rule 9.1(b) and the Court's *Scheduling Order*, Doc. 16, which required Defendant to file a cross-motion for summary judgment 30 days after Plaintiff filed her summary judgment motion. In the future, non-compliant pleadings may be stricken.

15-1 at 275. In April 2015, the ALJ issued an unfavorable decision and Plaintiff appealed. Doc. 15-1 at 112, 128. In July 2016, the Appeals Council remanded the case back to the ALJ to consider the treating source opinion of Dr. Jeffrey Kahn. Doc. 15-1 at 135.

Upon remand, the ALJ held a second hearing in November 2017. Doc. 15-1 at 41. At that hearing, Plaintiff amended her DIB claim to a closed period of disability from April 1, 2013 to May 31, 2015 ("the Relevant Period"), because she had returned to work. Doc. 15-1 at 42; Doc. 19 at 4 n.1. On April 25, 2018, the ALJ issued a second unfavorable decision. Doc. 15-1 at 15. The Appeals Council denied review of that decision, Doc. 15-1 at 7, which Plaintiff now appeals to this Court under 42 U.S.C. § 405(g).

**B. Background**

Plaintiff was 43 years old when she filed her initial application for DIB. Doc. 15-1 at 275. She has a high school education and past relevant work as a baker. Doc. 15-1 at 49, 351. The medical evidence reveals that Plaintiff suffers from a compromised immune system due to an Immunoglobulin A ("IgA") deficiency.

In March 2012, Plaintiff saw Dr. Joyce Shotwell, M.D., complaining that she had missed work frequently due to an almost constant cough and wheezing. Doc. 15-2 at 558. Dr. Shotwell diagnosed Plaintiff with extrinsic asthma, acute bronchitis, and allergic rhinitis. Doc. 15-2 at 559. Plaintiff also tested positive for multiple allergies and was prescribed medication. Doc. 15-2 at 559. In May 2012, Plaintiff continued to suffer from incessant coughing and reported coughing up "green chunks" despite taking her medication. Doc. 15-1 at 675. By June 2012, Plaintiff's cough had not improved, and she was coughing to the point of gagging and vomiting. Doc. 15-2 at 552. Plaintiff also exhibited allergic reactions to numerous antibiotics. Doc. 15-2 at 552. In October 2012, Dr. Shotwell opined that Plaintiff's situation was "very frustrating" and

that Plaintiff should not return to work, "since each time she has returned before, she gets sick almost immediately again." Doc. 15-1 at 734. In November 2012, Dr. Shotwell noted that while no one positive lab result explains all of Plaintiff's symptoms, Plaintiff is IgA deficient and therefore more susceptible to chronic sinus infections. Doc. 15-1 at 730.

In April 2013, Plaintiff was hospitalized for three weeks for pneumonia, as well as chronic sinus infection, requiring two surgical procedures. Doc. 15-1 at 658. Plaintiff reported "profound fatigue and shortness of breath with minimal exertion such as walking across the room." Doc. 15-1 at 658. She found it "increasingly difficult to carry out her activities of daily living." Doc. 15-1 at 658. In May 2013, Dr. Khan observed that Plaintiff would "cough so violently and to the point of vomiting." Doc. 15-1 at 823. Dr. Khan also opined that Plaintiff's IgA deficiency was making her more prone to infections. Doc. 15-1 at 828. In June 2014, Dr. Shotwell noted that "[Plaintiff] has not been able to stay better for more than a few weeks at a time." Doc. 15-1 at 923. Regarding Plaintiff's ability to work, Dr. Shotwell noted that Plaintiff "clearly cannot be exposed to the public" because "she coughs and wheezes with every infection and is at risk for . . . passing on infections." Doc. 15-1 at 923.

In January 2014, Dr. Kahn noted that Plaintiff is likely to miss work 3 to 5 days a month due to her symptoms. Doc. 15-1 at 671. In December 2014, Plaintiff was diagnosed with influenza, IgA deficiency, shortness of breath, and asthma with exacerbation. Doc. 15-2 at 78. In February 2015, Merle Filecia, N.P. assessed Plaintiff with bronchitis and asthma. Doc. 15-2 at 328-29. Merle Filecia also noted that Plaintiff was unable to sleep at night due to her cough. Doc. 15-2 at 328. In May 2015, Dr. Silverman observed Plaintiff was mildly dyspneic and had diminished breathing sounds. Doc. 15-2 at 323.

3

## C. Administrative Hearing

At the November 2017 hearing, Plaintiff testified that during the Relevant Period, she was unemployed, felt sick all the time, and continued to receive medical treatment from Dr. Khan. Doc. 15-1 at 44-46. According to Plaintiff, her immune system cannot be repaired, and doctors can only manage her condition via steroids and antibiotics. Doc. 15-1 at 48. Plaintiff also testified that she returned to work in 2015 because she "needed to go back to work," stating, "I guess my immune system built up a little bit." Doc. 15-1 at 46. Plaintiff described an occasion, however, when her employer ordered her to go to the emergency room because Plaintiff was vomiting in the trash can and had urinated in a chair. Doc. 15-1 at 47. Plaintiff averred that she continues to miss an average of three to five days a month due to illness, but that her asthma is manageable if she does not "go in the freezer a lot." Doc. 15-1 at 46, 48.

## D. ALJ's Findings

In his April 2018 decision, the ALJ found that during the Relevant Period, Plaintiff was not engaged in substantial gainful activity. Doc. 15-1 at 20-21. He also found that Plaintiff suffered from the severe impairments of obesity, hiatal hernia, selective IgA immunodeficiency disorder, asthma, biliary dyskinesia, chronic acalculous cholecystitis, depression, and anxiety, Doc. 15-1 at 21-22, but did not have an impairment or combination of impairments that met or equaled the severity for a presumptive finding of disability, Doc. 15-1 at 22.

The ALJ determined that Plaintiff was limited to sedentary work, except that she could lift/carry a maximum of ten pounds, stand and/or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Doc. 15-1 at 24. The ALJ further found that Plaintiff should avoid moderate exposure to airborne irritants, such as dust and fumes, and be limited to occasional interaction with co-workers, due to her compromised immune system, but

without limitations on interactions over the phone or where there is no physical contact. Doc. 15-1 at 24.

The ALJ concluded that Plaintiff was incapable of performing any of her past relevant work but could perform other work available in the national economy, including that of document preparer, table worker, and addresser. Doc. 15-1 at 30. The ALJ thus concluded that Plaintiff was not disabled. Doc. 15-1 at 31.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; and (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or

is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

## III. ARGUMENT AND ANALYSIS

Plaintiff's sole issue is whether the ALJ erred by not specifically addressing if Plaintiff could hold a job on a regular, continuing basis given the nature of her impairments which wax and wane in intensity. Doc. 19 at 4. Defendant responds that the ALJ did find that Plaintiff could sustain work on a continuous basis when he determined Plaintiff's RFC, which necessarily incorporates such a finding. Doc. 20 at 6. Defendant also argues that Plaintiff did not demonstrate that her IgA deficiency waxes and wanes such that the ALJ was required to address her ability to sustain continual employment. Doc. 20 at 8-9.

An ALJ need not make a finding regarding a claimant's ability to maintain employment in every case. *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). "Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." *Frank*, 326 F.3d at 619; see also *Dunbar v. Barnhart*, 330 F.3d 670, 671 (5th Cir. 2003). (inherent in the definition of RFC is the understanding that the claimant has an ability to work on a sustained basis).

The ALJ is only required to make a specific finding regarding a claimant's ability to maintain work where, "by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id.* Further, "in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time." *See id.* at 619-20.

In *Frank*, the Court of Appeals for the Fifth Circuit gave an example of the type of evidence that might require a separate finding of whether a claimant had the ability to maintain employment: "[f]or example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her

legs, this would be relevant to the disability determination." *Id.* at 619. On the other hand, a claimant's testimony that his back pain caused him to have both good and bad days does not "rise to the level of impairment anticipated by the Court in *Frank*." *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005). The appellate court reasoned "[i]t is axiomatic that the pain from any type of ailment will vary in intensity, especially the farther one gets from treatment that alleviates pain." *Id.* at 465; *cf. Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986) (finding that while a claimant may be capable of finding a job and working for short periods of time, it may be that "[t]he nature of the mental impairment is such . . . that the claimant is unable to remain employed for any significant period of time.").

Unlike the plaintiff in *Perez*, however, the evidence shows that Plaintiff's symptoms went well beyond pain that lessened and returned in cycle with the efficacy of his treatment. *See Perez*, 415 F.3d at 465-66 (plaintiff testified that his pain waxed and waned between his intermittent epidural injections). Here, Plaintiff's symptoms, such as vomiting and coughing to the point of gagging, Doc. 15-2 at 552, increased with her return to work, Doc. 15-1 at 734, and not due to the effectiveness of her medication wearing off.

Referencing *Drake v. Colvin*, Plaintiff argues her IgA deficiency is similar to rheumatoid arthritis because "IgA deficiency 'is also characterized by its episodic features and the way in which it waxes and wanes over time.'" Doc. 19 at 15 (citing 3:15-CV-2597-G-BK, 2016 WL 5793208, at *6 (N.D. Tex. Sept. 6, 2016) (Toliver, J.), *report and recommendation adopted,* 3:15-CV-2597-G (BK), 2016 WL 5661665 (N.D. Tex. Sept. 28, 2016) (Fish, J.). In *Drake*, the Court found that the evidence established that the plaintiff's rheumatoid arthritis was episodic and waxed and waned over time; thus, the ALJ erred in failing to determine whether the "plaintiff could hold whatever job she found for a significant period of time." *Drake*, 2016 WL

8

5793208, at *6 ). Plaintiff's argument is compelling, since a review of the record reveals that during the Relevant Period, just as was the case in *Drake*, Plaintiff's IgA deficiency was characterized by episodic features that waxed and waned over time. That evidence includes: (1) Plaintiff's medical records, which document periods of tolerable symptoms followed by several days each month of hospitalization, Doc. 15-1 at 658, 923; Doc. 15-2 at 78; (2) Plaintiff's frequent hospital visits due to her IgA deficiency making her more prone to infections, Doc. 15-1 at 828; (3) Dr. Shotwell's medical opinion that Plaintiff is unable to stay well for more than a few weeks at a time and that she clearly cannot be exposed to the public, Doc. 15-1 at 923; (4) Dr. Kahn's medical opinion that Plaintiff is likely to miss work 3 to 5 days a months due to her symptoms, Doc. 15-1 at 671; (5) Plaintiff's reported fatigue and shortness of breath from minimal exertion and increasing difficulty carrying out activities for daily living, Doc. 15-1 at 658; (6) Plaintiff's violent coughing "to the point of vomiting," Doc. 15-1 at 823; and (7) the medical literature.[2] Under these circumstances, the ALJ was required to determine whether *during the Relevant Period*, Plaintiff could maintain employment on a regular, continuing basis. By failing to make that determination, the ALJ committed legal error. *Frank*, 326 F.3d at 619-29; *Singletary*, 798 F.2d at 828.

      Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (quotation omitted). However, the ALJ's failure to specifically determine whether plaintiff could hold whatever job she found for a significant

---

[2] *See, e.g.*, Leman Yel, *Selective IgA Deficiency*, J Clin Immunol 30:10—16 (2010) (available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2821513/pdf/10875_2009_Article_9357.pdf) ("Most individuals with IgA deficiency are asymptomatic and identified coincidentally. However, some patients may present with recurrent infections of the respiratory and gastrointestinal tracts, allergic disorders, and autoimmune manifestations.") (cited by Plaintiff at Doc. 19 at 15).

9

period of time during the Relevant Period was not harmless. When the Commissioner "has relied on erroneous legal standards in assessing the evidence, he must reconsider that denial." *Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990). Accordingly, remand is warranted.

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 18, be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 20, be **DENIED**, and **t**he Commissioner's decision be **REVERSED**, and this case be **REMANDED** for further proceedings.

**SIGNED** on February 14, 2020.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(B). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).